# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| TARQUINNE TRE'VON McCAIN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:19-cv-00949-LCB-SGC |
| NEIKO WHITE, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Tarquinne Tre'Von McCain, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 1). Plaintiff names Sergeant Neiko White, Captain John Hutton, and Warden Willie Bennett as defendants in their individual capacities. (*Id.* at 5).[1] Plaintiff seeks monetary damages. (*Id.* at 6). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I.   PROCEDURAL HISTORY

On August 29, 2019, the undersigned entered an Order for Special Report directing the Clerk of Court to forward copies of the complaint to each of the named defendants and directing the defendants to file a special report addressing Plaintiff's

---

[1] The complaint also named Warden Willie Thomas as a defendant. (Doc. 1 at 5). The court dismissed the claims against Warden Thomas for failure to prosecute. (Doc. 27).

factual allegations. (Doc. 5). The undersigned advised the defendants the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. (*Id.*).

On January 27, 2020, the defendants filed a special report, supplemented by affidavits and/or other evidence. (Doc. 24). On February 19, 2020, the undersigned ordered the defendants to comply with the Order for Special Report by producing a copy of all videorecordings relevant to the claims or defenses in this action. (Doc. 26 at 2). The undersigned further ordered the defendants to make the recording available to Plaintiff and to notify the court of their compliance. (*Id*. at 2).

On March 4, 2020, the undersigned notified the parties the court would construe the special report as a motion for summary judgment and notified Plaintiff he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 29). The undersigned also advised Plaintiff of the consequences of any default or failure to comply with Rule 56. (*Id.*); *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On March 19, 2020, the defendants filed a CD containing a video of the incident involving Plaintiff and another inmate; on March 24, 2020, Plaintiff signed an acknowledgement stating he viewed the CD on that date from start to finish. (Doc. 31-1).

Plaintiff did not file a response to the defendants' special report, nor did he file a motion for leave to conduct additional discovery contemporaneously with his March 24, 2020 viewing of the video. Instead, on December 9, 2020, some nine (9) months later, Plaintiff directed a letter to the undersigned, asserting: (1) "the incident lasted from 1:30 p.m. to 10:00 p.m. on January 14, 2018;" and (2) the defendants failed "to submit a full video recording for the entire day." (Doc. 32). To the extent Plaintiff's letter can be construed as a motion for leave to conduct additional discovery, the motion is untimely. Plaintiff has proffered no reason for the dilatory request and his lack of due diligence. Accordingly, the undersigned recommends the court deny the motion.

This matter is now before the court on the defendants' motion for summary judgment.

## II.   STANDARD OF REVIEW

Because the court has construed the defendants' special report as a motion for summary judgment, Rule 56 governs its resolution. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of

proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because Plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by

lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III.  SUMMARY JUDGMENT FACTS

Around 2:30 p.m. on January 14, 2018, Sergeant White came to E-Dorm at Bibb Correctional Facility to conduct an institutional count. (Doc. 30, Video at 14:32). White ordered inmate Shorter to go into the hallway to be searched, but Shorter cursed and stated he was not going anywhere. (Doc. 24-6). White attempted to escort Shorter out, but Shorter pulled away from White and grabbed him by the waist. (Video at 14:35:37-14:35:54). White placed Shorter in a headlock. (Video at 14:35:58-14:36:20).

The commotion woke Plaintiff, and he observed White holding Shorter in a headlock. (Doc. 1 at 8). Shorter's arms and fingers were spread apart. (Doc. 1 at 8; Video at 14:36:20). Though a second officer was present, he did not intervene to assist inmate Shorter or call a code. (*Id*.). Plaintiff and inmate Traylor tried to intervene by grabbing Shorter and asking White to let him go. (Doc. 1 at 8; Video at 14:36:23-14:36:32). Other inmates began gathering around and yelled for White to let Shorter go. (Doc. 1 at 8, Doc. 24-2 at 1).

White attests Plaintiff pushed him during the altercation. (Doc. 24-2). Plaintiff declares he did not touch White. (Doc. 1 at 8). Due to the angle of the

5

camera and the positioning of Plaintiff's and White's bodies, the video does not confirm either version of events. Immediately before, however, the video shows Plaintiff pushing another inmate away from the officers. (Video at 14:36:33). Immediately thereafter, the video shows Plaintiff pulling an aggressive, combative Shorter away from the officers. (Video at 14:36:37-14:37:00).

Plaintiff attests the incident further angered White, who ran up to Plaintiff and accused him of putting his hands on the officer. (Doc. 1 at 8; Video at 14:37:02). Plaintiff declares White then turned around, chased Shorter with his night stick, and attempted to choke Shorter again. (Doc. 1 at 8). The video shows White attempting to grab Shorter, who responded combatively. (Video at 14:37:02-14:37:49). Plaintiff pulled and shoved Shorter away from White twice more during the 47 seconds that followed. (*Id.*). On the last occasion, Plaintiff held his hands outstretched with his back to White; as Plaintiff turned around, White pushed past him and traveled outside the video frame, leaving Plaintiff standing to the side of the bunkbed. (*Id.*).

During this entire melee, the second officer continued to observe; he did not move or attempt to calm the situation. (Doc. 1 at 8). Another inmate escorted Shorter out of the dorm, and White followed. (Video at 14:38:04-14:38:07). Plaintiff declares other corrections officers responded to the incident, and after they

escorted White toward the shift office, calm returned to the dorm. (Doc. 1 at 8).[2] For approximately 15 minutes after White's exit, several officers and inmates gathered in the hallway outside the dorm; several officers came into the dorm and spoke with inmates. (Video at 14:39-14:45). The remaining 45 minutes of the video are uneventful. (Video at 14:46-15:30).

Plaintiff declares that approximately 30 minutes after White exited the dorm, White, Captain Hutton, and other officers came back to E-dorm and made everybody lie face-down on their bunks. (Doc. 1 at 8-9). Hutton told White, "You better get every last one of them b*****s." (Doc. 1 at 9). White began looking around and hollered at Plaintiff to "quit hiding where your b***h a*s at." (*Id.*). After Plaintiff stood and identified himself, White approached, pushed him, ordered him to turn around, and handcuffed him. (*Id.*). After handcuffing Plaintiff, White used a nightclub to hit him in the side; White then used his forearm and nightclub to run Plaintiff's head into a bedrail, causing an open wound on the left side of his face. (*Id.*).

White pushed Plaintiff into the hallway while Captain Hutton and other officers watched. (Doc. 1 at 9). In the hallway, White pushed Plaintiff against a door and said he was going to "bust" Plaintiff's head. (*Id.*). White grabbed Plaintiff

---

[2] According to White's Duty Officer Report, Lieutenant Cheryl Fikes, Sergeant Ann Fulgham, and Officers Andrew Cutts Jr., Randy Jones, and Willie Simpson responded. (Doc. 24-6).

by his shirt and slung him into the wall, causing an open wound above Plaintiff's right eyebrow. (*Id.*). While Plaintiff and inmates Traylor and Shorter were lined against the wall, White threatened to "bust" their heads and used his nightclub to beat Traylor and Shorter. (*Id.*). White stated he would send them to W.E. Donaldson Correctional Facility ("Donaldson") and have his "boys" on staff there beat them until they were wheeled out on stretchers. (*Id.*). White also told the inmates to get on their knees and face the wall with their hands behind their heads; he stated, "Y'all do me a favor and bust y'all heads against the wall because I'm damn sure going to do it." (*Id.* at 9-10). When White walked away, Wardens Thomas and Bennett approached; they asked if the inmates had jumped on White, laughing and walking away when the inmates responded in the negative. (*Id.* at 10).

All three inmates were escorted to the Health Care Unit ("HCU"), where White continued to beat and choke Shorter and Traylor. (*Id.*). At 9:15 p.m., Nurse Bearden examined Plaintiff. (Doc. 24-5 at 3-4; Doc. 24-7). Plaintiff did not make a statement, but Bearden observed an open wound on his right eyebrow, scrapes to his right cheek, and an open wound on his left cheek. (Doc. 24-7). Plaintiff was in no acute distress and was breathing with ease. (Doc. 24-5 at 4). Nurse Bearden treated Plaintiff's open lacerations and released him to corrections officials. (*Id.*).

White placed the inmates in segregation and charged them with inciting a riot. (Doc. 1 at 10). The next week, all three inmates were transferred to Donaldson.

(*Id.*). Plaintiff feared for his life, but when the officers at Donaldson viewed the video of the incident at Bibb Correctional Facility during the disciplinary hearing, they concluded White should not have filed the disciplinary charge. (*Id.*). Hearing Officer Johnson completed a disciplinary hearing report finding Plaintiff not guilty of inciting a riot based on the video evidence. (Doc. 24-8 at 2). The report noted Plaintiff had grabbed Shorter and pushed him backwards away from corrections officials. (*Id.*).

In their summary judgment affidavits, White and Hutton summarily declare Plaintiff's "allegation is not correct." (Doc. 24-1; Doc. 24-2). Though it is clear Hutton did not witness the incident, both he and White attest Plaintiff and inmate Traylor pushed White while he attempted to restrain Shorter and that they were apprehended and escorted to the HCU for medical assessment and segregation. (*Id.*). Warden Bennett attests Plaintiff and Traylor "hindered" White "from doing his assigned job" while White was attempting to subdue Shorter. (Doc. 24-3 at 2). Bennett further attests that he never observed White use any excessive force. (*Id.*).

## IV. ANALYSIS

Plaintiff claims White subjected him to excessive force, while Hutton and Bennett failed to protect him from White. (Doc. 1 at 5). Plaintiff's claims are governed by the Eighth Amendment's Cruel and Unusual Punishments Clause. The prohibition against cruel and unusual punishment is triggered when a prisoner is

subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22).

"The use of force must stop when the need for it to maintain or restore discipline no longer exists." *Skrtich v. Thornton*, 280 F.3d 1295, 1304 (11th Cir. 2002) (citing *Whitley*, 475 at 320-21). Therefore, if a non-compliant inmate has been restrained by guards and no longer poses a threat, he "cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain." (*Id.*).

10

The Supreme Court set out certain factors to consider when evaluating whether the force used was excessive: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Hudson*, 503 U.S. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986). Finally, it is well established that a prison official need not:

> actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an [official] who is present at the scene and who fails to take reasonable steps to protect the victim of another [official's] use of excessive force, can be held liable for his nonfeasance.

*Skrtich*, 280 F.3d at 1302 (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-1331 (11th Cir. 2008) (citing *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000)).

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de*

11

*minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

To create a genuine issue of material fact, Plaintiff must come forward with evidence from which a reasonable inference can be drawn that the defendants acted maliciously and sadistically. If Plaintiff creates such a dispute, then an affirmative defense of qualified immunity is unavailable to the defendant(s). *See Johnson. v. Breeden*, 280 F.3d 1308, 1319 (11th Cir. 2002) (holding qualified immunity does not apply to an excessive force claim because *Hudson* and *Whitley* clearly established the malicious and sadistic use of force violates the Constitution).

Even though the defendants dispute the version of events presented by Plaintiff, at this stage of the proceedings the court must construe the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). Moreover, where a conflict exists between the parties' allegations or evidence, "the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Applying the *Whitley* factors to the above facts and inferences, White and Hutton returned to Plaintiff's dorm approximately 30 minutes after the dorm had completely recovered from the incident with Shorter. (Doc. 1 at 9). Hutton cursed and told White, to "get every last one of them b*****s." (*Id.*). In response, White

cursed at Plaintiff and told him to stop hiding. (*Id.*). Plaintiff stood up and turned around, and White handcuffed him. (*Id.*). White then hit Plaintiff in the side with a baton and used his forearm and nightclub to run Plaintiff's head into a bedrail, causing an open wound on the left side of Plaintiff's face. (*Id.*). White escorted Plaintiff into the hallway and, in the presence of Hutton, grabbed Plaintiff by his shirt and slung him into the wall, causing an open wound above his right eyebrow. (*Id.*). During the event, White humiliated, cursed, and threatened Plaintiff with the possibility of grievous bodily injury by prison staff at Donaldson. (*Id.*).

After White walked away, Warden Bennett approached Plaintiff and asked if he had jumped on White. (*Id.* at 10). When Plaintiff said he did not, Bennett laughed and also walked away. (*Id.*). Although White did not assault Plaintiff again, Plaintiff attests White beat Shorter and Traylor while all three were awaiting treatment. (*Id.*).

Under the Rule 56 standard, Plaintiff posed no threat to White or Hutton when they re-entered the dorm; nor could either defendant have reasonably perceived a threat. Thus, factors one through four weigh in Plaintiff's favor. As for the final factor, the evidence shows the wounds on Plaintiff's cheek and eyebrow were treatable with steri-strips. Nonetheless, the issue is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). A

13

reasonable jury could find White used force against Plaintiff—and Hutton failed to protect Plaintiff from White—out of malice, not good-faith. Accordingly, summary judgment is due to be denied as to White and Hutton.

Conversely, Plaintiff has not created a genuine issue of material fact in connection with his failure to protect claim against Warden Bennett. Plaintiff does not attest Bennett was present either in the dorm or hallway to witness White's and Hutton's behavior. (Doc. 1 at 10). Instead, Plaintiff claims Bennett approached him *after* White walked away. (*Id*.). Bennett may have acted unprofessionally by laughing and walking away when Plaintiff denied jumping on White. But unlike Hutton, Bennett was not in a position to intervene and take reasonable steps to prevent White's use of force against Plaintiff.

## V.   RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** the motion for summary judgment be **GRANTED** as to Warden Willie Bennett and **DENIED** as to defendants Sgt. White and Captain Hutton. The undersigned **FURTHER RECOMMENDS** the claims against defendants White and Hutton be **REFERRED** to the undersigned for further proceedings. Finally, the undersigned **RECOMMENDS** the court **DENY** Plaintiff's motion for leave to conduct additional discovery. (Doc. 32).

## VI.   NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by

law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 27th day of January, 2021.

_/s/ Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE